419 F.Supp. 93 (1976)
UNITED STATES of America ex rel. Richard W. GOODYEAR, Petitioner,
v.
DELAWARE CORRECTIONAL CENTER, Respondent.
Civ. A. No. 76-107.
United States District Court, D. Delaware.
September 10, 1976.
*94 Martin P. Tully of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for petitioner.
Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for respondent.

OPINION
STAPLETON, District Judge:
Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking relief from his judgment of conviction for burglary in the first degree and rape. Petitioner was convicted in the Superior Court of New Castle County. On appeal, the Delaware Supreme Court affirmed the conviction. Goodyear v. State, 348 A.2d 174 (1975).
Petitioner presents three grounds for relief in this Court. First, he argues that the identification procedure employed by the State and the subsequent admission of testimony concerning that identification denied petitioner due process of law. Further, he argues that the failure to specially instruct the jury about the eyewitness identification testimony was a denial of due process. Finally, the petitioner claims that prejudicial newspaper publicity during the trial deprived him of his right to a fair trial by an impartial jury.
For the reasons stated below, the petition is denied.

FACTUAL BACKGROUND
Early in the morning of January 4, 1972, the victim of the burglary and rape which this case concerns was awakened in her bed by an intruder who put a knife to her throat and threatened her. The intruder then covered her head with a blanket and *95 raped her. At the time, the bedroom was illuminated only by a light shining from another room in the apartment.
The victim saw her attacker once more during the incident. After he left the bedroom, he went into the bathroom leaving the bedroom door ajar. The victim went to the door and got a profile view of the rapist as he went down the hallway and out the door.
The victim called the police immediately. Later in the day, she went to the police department where she gave the police a description of her assailant and reviewed 125 "mug shots", none of which she identified.
About two weeks after the incident, the victim was outside her apartment in her car preparing to drive away. She glanced up and saw a person she recognized as her attacker through the window of the entrance to a neighboring apartment building. She sounded the horn of her car and the person ran up the stairs and out of sight.
In May, 1972, the detective in charge of the case called the victim and asked her to come to Magistrate's Court where preliminary hearings on unrelated matters were being held. The detective told her that suspects in the case would be present. She met the detective at the court as requested and then went into the courtroom and took a seat by herself. There were about thirty or thirty-five people in the room, including seven to nine prisoners who were dressed in civilian clothing. Petitioner was among the prisoners.
The detective did not direct the victim's attention to any particular group or person in the room. After about ten minutes, he came up to her and asked whether she recognized anyone there as the rapist. She pointed out the petitioner but expressed some uncertainty because he was wearing glasses and had a small beard. Her assailant had had neither at the time of the attack. She said that she would be sure if she could hear him speak. As everyone was leaving the courtroom, the detective stopped petitioner and spoke to him. As petitioner was responding, the victim who was with the detective cried, "That's him. That's him."
Petitioner's trial began on Thursday, February 22, 1973. The court recessed for the weekend on Thursday afternoon without warning the jury to avoid news accounts of the case.[1] During the three-day recess, local newspapers carried two articles relating to the trial. Each featured in its headline information about a prior conviction of petitioner for a stabbing.
On Monday morning court reconvened and petitioner's lawyer moved for a mistrial on the basis of the sensational news stories. The trial court questioned the jurors in a group as to whether they had read the papers in which the articles had appeared. At least five jurors and the alternate raised their hands signifying they had. The court then inquired if any juror had read a headline or article concerning the defendant. One juror raised a hand. Finally, the court asked whether any juror had discussed the headline or article in question with anyone. No juror responded. The court excused the juror who had read the article replacing him with the alternate and denied the motion for a mistrial. The trial proceeded and the jury found petitioner guilty with no recommendation of mercy. Petitioner was sentenced to life imprisonment for rape and to twenty-five years for burglary.

I. IDENTIFICATION TESTIMONY
In evaluating the use of identification testimony, it is necessary first to establish that the witness had an adequate opportunity to observe the person he later purports to identify. United States v. Barber, 442 F.2d 517, 520 (3rd Cir. 1971). Here, although the room was scantly lit and the victim abruptly awakened, the testimony *96 indicates that the victim saw enough of her attacker to be able to make an identification. She saw him both before he covered her face and again as he hurried down the hallway of her apartment to leave. Although she told police that she did not get "a really good look at his face", she was able to describe his build, hair, race and clothing. Her description was similar in its level of detail to the victim's description in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), which the Supreme Court held was sufficiently reliable to support a later identification. Moreover, the victim's spontaneous identification two weeks after the assault suggests that she did have a mental image of the rapist.
The second issue presented by the use of identification testimony against the defendant is whether the circumstances of the out-of-court identification were "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). In this case I find no suggestiveness in the circumstances at all.
An identification is suggestive when the police conduct it in such a way that the witness' attention is directed to a particular individual as the suspect upon whom the police have focused. Justice Brennan, in United States v. Wade, 388 U.S. 218, 233, 87 S.Ct. 1926, 1935, 18 L.Ed.2d 1149 (1967), enumerated some of the more invidious forms of suggestiveness identifications have involved, for example:
that all in the line-up but the suspect were known to the identifying witness, that the other participants in a line-up were grossly dissimilar in appearance to the suspect, that only the suspect was required to wear distinctive clothing which the culprit allegedly wore, that the witness is told by the police that they have caught the culprit after which the defendant is brought before the witness alone or is viewed in jail, that the suspect is pointed out before or during the line-up, and that the participants in the line-up are asked to try on an article of clothing which fits only the suspect.
The identification that occurred in this case shares none of the offensive characteristics of the procedures listed above. The victim was informed that "some suspects"[2] would be present in court on the day in question. Thirty or thirty-five people were in the small courtroom when she arrived. There is nothing in the record to indicate that petitioner's appearance had some distinctive quality that set him apart from everyone else in the room. Out of that large group, the victim made a tentative identification of petitioner despite the fact that he had grown a beard and was wearing glasses. She confirmed her identification when she saw him at closer range and listened to his voice.
It is the voice identification of which petitioner complains particularly. He argues that it constituted a show-up, that is, a one-to-one confrontation, because the victim listened to no other voices. Show-ups are said to be inherently suggestive. Nevertheless, not all show-ups violate due process. Stovall v. Denno, supra. The "totality of circumstances" must be considered. Id., at 302, 87 S.Ct. 1967. Here, the voice identification cannot be viewed apart from the prior physical identification. The only suggestion that petitioner was the rapist came from the victim herself. The detective did not initiate a conversation with the suspect until the victim pointed him out and said she would be certain if she heard his voice. The detective did not assist her or encourage her to come to the conclusion she reached. Compare Coleman v. Alabama, 399 U.S. 1, 6, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).
While I do not dismiss lightly the widespread distrust of all eyewitness identifications that has frequently been expressed, e. g., United States v. Wade, supra, at 228, 87 S.Ct. 1926, I think the identification procedure the detective used in this instance provided at least as much protection to petitioner as the more common and accepted *97 line-up. Accordingly, the petitioner has not shown any violation of due process in this respect.

II. INSTRUCTION ON IDENTIFICATION
As an initial bar to this Court's considering whether petitioner was entitled to a special instruction concerning the identification testimony, the State argues that petitioner has not exhausted his state remedies on this issue. Although the Delaware Supreme Court did not address the instruction issue when it affirmed petitioner's conviction, the record reveals that the parties did present the question to that court. That is all that is necessary to satisfy the exhaustion requirement. Brown v. Allen, 344 U.S. 443, 448-49, n. 3, 73 S.Ct. 397, 97 L.Ed. 469 (1953); United States ex rel. Geisler v. Walters, 510 F.2d 887, 892 (3d Cir. 1975).
In support of his argument that the failure to specially instruct the jury about the identification testimony violates due process, counsel for petitioner cites United States v. Barber, supra. Barber does establish guidelines to be applied prospectively in the courts of the Third Circuit in cases where identification testimony is a crucial issue. These guidelines, which call for more particularized instructions concerning the evaluation of such testimony, were established, however, in the exercise of the Appellate Court's supervisory power. The holding of the Barber case was that the trial court had not committed reversible error by giving a general instruction on identification testimony not dissimilar to the one given by the Delaware trial court in this case.[3] Accordingly, I believe that Barber supports the proposition that petitioner's right to due process was not violated by the trial court's failure to give more particularized *98 instructions in this case.[4] Thus, while it may have been preferable for the trial court to have cautioned the jury about the difficulties that inhere in identification testimony, this failure did not violate any constitutional right of the petitioner.

III. PREJUDICIAL PUBLICITY
Petitioner's final claim concerns prejudicial publicity about his trial that appeared in local newspapers during a three-day recess. The headline of one of the articles in question described petitioner as a "Convicted Stabber" the other referred to him as a "Knifer".[5]
It is a "basic requirement of due process" that an accused who has requested a jury trial be tried "by a panel of impartial, `indifferent' jurors". Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). There is a serious question of whether a juror who had read the news reports referred to here could render an impartial verdict. See Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). The question that must be decided is whether the trial court adequately established that the jurors who convicted petitioner had not been exposed to the articles. I conclude that it did.
Ordinarily, when the question of juror exposure to adverse news accounts arises, the court should examine each juror individually and out of the presence of the other jurors to assure that the publicity has not affected the juror's ability to render an impartial verdict. Mares v. United States, 383 F.2d 805 (10th Cir. 1967); United States v. Accardo, 298 F.2d 133 (7th Cir. 1962); Coppedge v. United States, 106 U.S.App. D.C. 275, 272 F.2d 504 (1959); Smith v. State, 317 A.2d 20, 23 (Del.1974). The purpose of the individual interviews is to overcome any reluctance to speak out the jurors may have. United States v. Accardo, supra, at 136. The facts in this case demonstrate, however, that this panel of jurors was not inhibited or too intimidated to respond. Six persons responded affirmatively when asked whether they had read the newspaper. One admitted having seen the particular articles. There is no reason to think that if the others had seen the stories they would have concealed it from the court. Thus, while the jurors were not polled singly, petitioner has not shown that he was thereby deprived of an impartial jury.
NOTES
[1] Delaware routinely provides petit jurors with a handbook of instructions including admonitions not to read or listen to accounts of the trial or discuss the case with anyone. Smith v. State, 317 A.2d 20, 23 (Del.1974). The record does not reveal whether the jurors in this case received or read the handbook.
[2] Trial Transcript at 50.
[3] Petitioner's trial judge charged in part:

I have completed the instruction as to the specific elements of the two crimes charged. The following instructions apply to each count.
In each of the charges that I have been giving you. I have been speaking of findings that you must make as to what the defendant did. I am sure that you have in mind that an important defense in this case is the identification of the defendant. You must, of course, be satisfied beyond a reasonable doubt that the defendant has been properly identified and was indeed the one that did these acts, and that these acts actually took place before you may find the defendant guilty of any crime. If there is any doubt about his identification, you must give him the benefit of that doubt and find him not guilty.
One method of identification of an accused person is to have the witness or the victim, as a witness is sometimes known, without suggestion from any police officer or any interested persons, pick out the accused from a number of persons unknown to the witness. An identification made by the witness may be considered by the jury, but the jury should bear in mind all of the surrounding circumstances in evaluating the evidence given as to the identification. As I have mentioned earlier, if you feel that the identification leaves a reasonable doubt as to the guilt of the defendant, you should give him the benefit of such doubt and find him not guilty of any crime.
The defendant denies that he committed either crime. He denies that he was at the apartment in question on the night in question. He maintains he has not been correctly identified as the person involved, and he states he was elsewhere on the night in question. If any of these defenses is established by evidence or if any of them create a reasonable doubt in you minds, then your verdict should be not guilty.
The defendant contends that he was not present at the time when and at the place where he is alleged to have committed the offense charged in the indictment. If, after consideration of all the evidence in the case, you have a reasonable doubt as to whether the defendant was present at the time and place the alleged crime was committed, you should acquit him.
It is not the defendant's burden to prove that he was not at the scene of the crime when it was committed. It is the burden of the State to prove that the defendant committed the crime as the indictment describes its commission, by evidence that is beyond a reasonable doubt.
In considering the testimony of an eyewitness, you should be satisfied beyond a reasonable doubt that the identification of the defendant as the person who committed the crime was accurately made by the eyewitness. In this connection, you should consider all the factors in the evidence which you deem proper and necessary for the purpose of making this determination.
[4] United States v. Telfaire, 152 U.S.App.D.C. 146, 469 F.2d 552, 557 (1972).
[5] Petitioner's Opening Brief at 9.