Charles Frank GRIFFIN, Petitioner,

v.

James ROSE, Warden, Tennessee State Penitentiary and William M. Leech, Jr., Attorney General, State of Tennessee, Respondents.

No. Civ-1-81-126.

United States District Court,
E. D. Tennessee, S. D.

Aug. 24, 1981.

On Motion to Alter or Amend
Oct. 2, 1981.

John R. Seymour, Chattanooga, Tenn., for petitioner.

Robert L. Jolley, Jr., Senior Asst. Atty. Gen., Nashville, Tenn., for respondents.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which the petitioner seeks to set aside his conviction and sentence in the case of *"State of Tennessee v. Charles Frank Griffin,"* Docket No. 134985 in the Criminal Court for Hamilton County, Tennessee. On July 15, 1977, the petitioner was convicted of armed robbery by a jury upon a plea of not guilty and received a life sentence. The conviction was appealed to the Tennessee Court of Criminal Appeals which affirmed the conviction on April 19, 1978. The petitioner further appealed the conviction to the Tennessee Supreme Court which affirmed the judgment of the trial court on August 18, 1980. 604 S.W.2d 40 (Tenn. 1980). A petition to rehear was denied.

The petitioner seeks federal habeas corpus relief based upon the following grounds:

(1) The petitioner was denied his right to be free from an illegal search and seizure in violation of the Fourth and Fourteenth Amendments;

(2) The petitioner was denied due process and the right to counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution as he was not advised of his right to counsel prior to an identification lineup;

(3) The petitioner was denied due process of law as the trial court allowed to be introduced into evidence a lineup identification which was unduly suggestive and which was the fruits of the illegal arrest; and

(4) The petitioner's confession was obtained through coercion and was thus unconstitutionally admitted at trial.

This lawsuit is presently before the Court upon the respondents' response (Court File No. 8), respondents' motion to dismiss or in the alternative for summary judgment (Court File No. 9), petitioner's motion that Exhibit 4 be supplemented by further portions of existing transcript (Court File No.

14), and portions of the state court record, consisting of the state appellate court opinions, the state appellate court briefs for the petitioner and the State of Tennessee, and portions of the trial transcript (Court File No. 10).

The record shows and it is undisputed that the petitioner has exhausted his state court remedies with respect to the grounds asserted as a basis for relief. Therefore, these issues are properly before the Court. *Picard v. Conner,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); 28 U.S.C. § 2254(b).

The Court finds that the record is adequate for a decision to be made on the issues presented, and since there are no material facts in dispute, an evidentiary hearing is not required and the matter will be decided on the motion for summary judgment filed by the respondents (Court File No. 9). *See Hernandez v. Schneckcloth,* 425 F.2d 89 (9th Cir. 1970); Rule 56, Federal Rules of Civil Procedure.

■ The Court will initially consider petitioner's first ground asserted as a basis for relief. The petitioner contends that he was illegally arrested and searched in violation of the Fourth and Fourteenth Amendments to the United States Constitution and that the evidence seized incident to the illegal arrest and search was improperly admitted at trial. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) the Supreme Court held that "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052. The petitioner concedes the applicability of *Stone v. Powell, supra,* but alleges that habeas corpus review of his claim is not precluded under *Stone* because he was not afforded "an opportunity for full and fair litigation" of the Fourth Amendment issue in state court, *see Id.* at 494, n.37, 96 S.Ct. at 3052, n.37, because the Tennessee Supreme Court upheld the arrest on a different legal basis than the lower courts.

The state court record reveals that prior to trial the petitioner moved to suppress the evidence obtained as a result of the arrest and subsequent search alleging that he had been arrested illegally. (Ex. 4, p. 1). The trial court overruled the motion finding there was probable cause for an arrest. (Ex. 4, p. 80). Subsequently at trial petitioner's counsel objected to the introduction of the evidence discovered incident to the arrest and search and objected to the lineup testimony. The jury was ordered to leave the room and an evidentiary hearing was held on the legality of the arrest and lineups. (Ex. 4, p. 182). After hearing various witnesses, including the petitioner, the trial court overruled the motion, concluding that the arrest was legal and that the identification procedure used to identify the petitioner was not unduly suggestive. (Ex. 4, p. 191–193). These issues were also raised as assignments of error to the Tennessee Court of Criminal Appeals which found probable cause for the warrantless arrest and upheld the admission of the lineup testimony. The Tennessee Supreme Court granted certiorari to specifically address the issue of the legality of the arrest and search. The Tennessee Supreme Court concluded that there was insufficient information known by the arresting officer at the time he stopped the petitioner to constitute probable cause necessary for a full arrest, but upheld the arrest finding there was sufficient probable cause to permit an "investigatory stop" under the doctrine of *Terry v. Ohio,* 391 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *Moore v. Cowan,* 560 F.2d 1298 (6th Cir. 1977), *cert. den.* 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 (1978), the Sixth Circuit Court of Appeals upheld the district court's refusal to consider appellant's Fourth Amendment claim on habeas corpus review because the appellant had had an opportunity for a full and fair hearing on the claim in the state courts as at trial a motion to suppress the evidence was made and considered and the appellant had raised the issue in the state appellate courts. *Id.* at 1302. In accordance with *Moore* is *Brad-*

ley v. Cowan, 561 F.2d 1213 (6th Cir. 1977), in which the Court of Appeals reviewed the prior state proceeding to determine if the habeas petitioner had been given the opportunity for a full and fair hearing. The Court concluded that such an opportunity had been given as the petitioner had raised the issue before trial by motion to suppress, at trial by objection, on direct appeal after trial and by motion to vacate sentence pursuant to state law.

These cases are similar and controlling in the instant case. The legality of petitioner's arrest and search was raised prior to trial and fully considered by the trial judge; the issue was raised at trial and considered at an evidentiary hearing and the issue was raised in both state appellate courts and fully considered by both courts. It is irrelevant that the Tennessee Supreme Court upheld petitioner's arrest on a different legal theory than the lower courts and on a basis that the petitioner had not specifically addressed; what is important is that the petitioner had an *opportunity* for a full review of his claim. *United States ex rel. Petillo v. New Jersey,* 562 F.2d 903 (3rd Cir. 1977); *Holmberg v. Parratt,* 548 F.2d 745 (8th Cir. 1977). The petitioner was afforded such an opportunity and therefore further review of his Fourth Amendment claim is precluded by *Stone v. Powell.*

The petitioner's second ground for habeas corpus relief is that he was denied his right to counsel and due process because he was not advised of his right to counsel prior to his identification lineup. The petitioner contends that he was entitled to counsel at the lineup because the right to counsel attaches at the commencement of a criminal prosecution which under Tennessee law was commenced when petitioner was arrested.

The petitioner was arrested about six o'clock one evening and placed in a lineup the next morning (Ex. 4, p. 26). At the evidentiary hearing, police officers testified that prior to the lineup the petitioner was advised of his rights, including the right to counsel. (Ex. 4, pp. 67–304). Petitioner stated he was not sure whether he had been advised of his rights prior to being placed in the lineup, that he could not remember (Ex. 4, p. 26).

Regardless of whether the petitioner was advised of his right to counsel prior to the lineup, petitioner had no constitutional right to counsel at that time. The right to counsel attaches to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Moore v. Illinois,* 434 U.S. 220, 224, 98 S.Ct. 458, 462, 54 L.Ed.2d 424 (1977) (quoting *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). The Supreme Court in *Kirby v. Illinois, supra* upheld an identification conducted in the absence of counsel shortly after the accused's arrest because "adversary judicial criminal proceedings" had not yet been initiated. 434 U.S. at 227, 98 S.Ct. at 464. Subsequently a majority of the Court in *Moore v. Illinois, supra,* reaffirmed the holding of *Kirby* and reiterated the *Kirby* standard regarding right to counsel. Although in the instant case criminal proceedings had commenced because the petitioner had already been arrested at the time of the lineup, no *adversary judicial* criminal proceedings had yet occurred. Therefore, petitioner's right to counsel had not yet attached and it is irrelevant whether petitioner was advised of his right to counsel prior to being identified at the lineup. Accordingly, this ground is without merit and will be dismissed.

The Court now turns to the petitioner's contention that testimony regarding his lineup identification was unlawfully admitted at trial because the lineup was unduly suggestive and fruits of an illegal arrest. Consideration of the claim that the lineup was the fruits of an illegal arrest and was therefore inadmissible is precluded by *Stone v. Powell, supra,* as the petitioner had an opportunity for full and fair litigation of this claim at the state court level. *See Simmons v. Clemente,* 522 F.2d 65 (2nd Cir. 1977). However, *Stone* is not applicable to lineup situations where improper suggestiveness is alleged. *Moore v. Illinois, supra;*

*Swicegood v. Alabama,* 577 F.2d 1322 (5th Cir. 1978). Therefore, this aspect of the claim may properly be reviewed on habeas corpus.

The petitioner and two codefendants were charged with the armed robbery of Johnson's Truck Stop. Eyewitnesses described the robbers as three tall, black males, one extremely tall, one wearing a dark leather jacket and jeans, another wearing dark trousers and one wearing a toboggan (Tr. 65, 182). At the evidentiary hearing on the motion to suppress the lineup testimony, the petitioner testified that he was placed in a lineup with eight other men; that the police officers had the petitioner put on a black leather coat before he went into the lineup; and that while the lineup was in progress they had him put on a toboggan. The lineup sheet introduced as an exhibit, listed the petitioner as 24 years old, with a height of 6' 4", weight of 185 pounds and wearing a black leather jacket and red plaid pants. Seven other black males were in the lineup with petitioner. One of the extras stood 6' 5", weighed 185 pounds and had on blue jeans and a jacket. All of the lineup participants wore jackets of some type, were of slim build and with the exception of two men, over six feet tall. According to the testimony of two eyewitnesses and two police detectives, none of the eight men wore hats in the first lineup, at which time Ms. Matthews, one of the eyewitnesses, tentatively identified the petitioner but stated that his hair was different. In order to cover up petitioner's hair, police officers had all the lineup men leave the room, put on toboggans and return for a second lineup. At that time, the three eyewitnesses positively identified the petitioner.

■ An identification procedure used to identify a defendant, that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violates the due process clause of the Fourteenth Amendment. *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977); *Simmons v. United States,* 390 U.S. 377,

384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Review of an identification procedure involves a two-step inquiry. *Allen v. Estelle,* 568 F.2d 1108, 1111–1112 (5th Cir. 1978). First, it must be determined whether the identification evidence has been obtained through unnecessarily suggestive confrontation procedures. If the procedure is found to be suggestive, the second and central question is whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. *Manson v. Brathwaite, supra* 432 U.S. at 114, 97 S.Ct. at 2253; *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1975).

■ An identification is not unnecessarily suggestive unless the police conduct the identification procedure in such a way that the witness' attention is directed to a particular individual as a suspect upon whom the police have focused. *United States ex rel. Goodyear v. Delaware Correctional Center,* 419 F.Supp. 93 (D.C.Del.1976). A reasonable effort to harmonize the lineup is normally all that is required, *United States v. Lewis,* 547 F.2d 1030 (8th Cir. 1976), *cert. den.* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 and disparities in the physical appearance of the lineup participants is not alone sufficient to warrant the finding of suggestiveness. *Swicegood v. State of Alabama,* 577 F.2d 1322 (5th Cir. 1978).

■ In the present case, the lineup was well harmonized as there were only minor physical differences between the lineup participants. Although the eyewitnesses testified that one of the robbers had been extremely tall, the petitioner's height at the lineup did not significantly set him apart as there was one lineup participant an inch taller than petitioner with approximately the same build. Nor was there any attention focused on the petitioner because he had on a black leather jacket as another participant in the lineup had on a black leather jacket and all the men had on jackets of some type. From the photograph of the lineup attached to the transcript and from the description of the participants contained in the lineup sheet, it appears that

there was nothing that set the petitioner apart from the other participants. Therefore, the Court concludes that the identification procedure used to identify the petitioner as one of the robbers was not unnecessarily suggestive. Additionally the Court notes that there was not a substantial likelihood of misidentification as two of the eyewitnesses stated that they had recognized the petitioner at the time of the robbery because on three prior occasions the petitioner had come into the truck stop seeking work. The Court concludes that ground three should be dismissed.

■ With regard to petitioner's final claim, petitioner alleges that his confession was involuntary because he was withdrawing from a heroin addiction at the time he confessed and because the confession was obtained by promises which the state authorities failed to keep. After an evidentiary hearing on the issue, the state trial court ruled that petitioner's confession was voluntary and thus admissible. The issue of the voluntariness of petitioner's confession was specifically considered by both the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court, which affirmed the trial court's findings. These findings are entitled to a presumption of correctness and the burden is upon the petitioner to establish by convincing evidence that the findings are erroneous. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ At the evidentiary hearing the petitioner testified that he confessed to the present crime and gave additional information regarding other armed robberies because both the police and the district attorney's office promised him that he would receive a sentence of only five years with the majority of these years to be spent in the hospital to cure his heroin addiction. He also stated that while he was in jail he received no treatment for his addiction and had to go "cold turkey". The petitioner testified that although he was not in a lot of pain when he was withdrawing from heroin, he did not feel like his normal self.

A police detective and an assistant district attorney testified that the following occurred. The petitioner repeatedly requested a deal of·five years, with help for his drug treatment if he cooperated. The petitioner exhibited no signs of going through withdrawal, although on one particular day petitioner was perspiring heavily. The detective wanted to help petitioner cure his addiction, but there was no mention of a specific deal, just general statements, such as "the District Attorney's Office will help you if your information proves valuable" or "if you give us some kind of concrete information we might discuss a deal." The assistant district attorney told the petitioner that the lowest they could probably go would be 10 years, the minimum sentence for armed robbery, although there was no deal to this effect.

Based on the above evidence, the Court is unable to say that the state courts were clearly in error in finding the petitioner's confession voluntary. Although petitioner's testimony was that a deal had been made in which he would get only five years if he confessed, testimony from the police officers and district attorneys supports the conclusion that no specific deal was finalized even though there had been some discussion of a possible deal. Additionally, the Court finds that the confession was not rendered involuntary by the fact that the petitioner was withdrawing cold turkey from heroin. The petitioner himself stated that he had not been in any pain although he was not feeling like himself, and Detective Kennedy testified that he saw the petitioner in no pain although he did see him on one occasion perspiring heavily. The Court concludes that the petitioner has failed to establish by convincing evidence that the state courts were wrong in finding that his confession was voluntary. Therefore, this ground will be dismissed.

As the Court has found against the petitioner on each of his grounds for relief, an order will enter in accordance with this memorandum, granting the respondents' motion for summary judgment and dismissing this petition for writ of habeas corpus.

## MEMORANDUM

### On Motion to Alter or Amend

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which the petitioner seeks to set aside his conviction and sentence in the case of "*State of Tennessee v. Charles Frank Griffin,*" Docket No. 134985 in the Criminal Court for Hamilton County, Tennessee. In an order dated August 24, 1981, this Court granted respondents' motion for summary judgment and dismissed the petition. This case is presently before the Court upon petitioner's motion to alter or amend judgment and for reconsideration (Court File No. 17).

In his petition, one of petitioner's grounds for relief was that he was not afforded an opportunity for a full and fair hearing on his Fourth Amendment claim, i.e., that his initial stop by the police was the product of an illegal dragnet (petitioner's response, Court File No. 9, pp. 3–11). This Court held that petitioner was afforded such an opportunity and dismissed that ground under the authority of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

In his present motion, petitioner contends that this Court did not take into consideration new evidence concerning the legality of petitioner's arrest. He argues correctly that the standard of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) applies to determine whether a state has provided an opportunity for a full and fair litigation of a Fourth Amendment claim under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Townsend,* the Court held that where there has been newly discovered evidence which could not have been reasonably presented to the state court and which bears upon the constitutionality of the applicant's detention the federal court must grant an evidentiary hearing. (372 U.S. at 317, 83 S.Ct. at 759, 9 L.Ed.2d at 788). As the testimony referred to in petitioner's affidavit (Court File No. 18) may be newly discovered, and as it may bear on the constitutionality of petitioner's arrest, the Court concludes that the *Townsend* test is met in this case.

However, this does not automatically entitle the petitioner to an evidentiary hearing to consider petitioner's new evidence. It has been held that under *Townsend,* before a hearing is required, "it must appear that the 'petitioner's allegations if proved, would establish the right to his release' " *Morris v. Wyrick,* 516 F.2d 1387, 1392 (8th Cir.) *cert. den.,* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975), quoting *Townsend, supra,* 372 U.S. at 307, 83 S.Ct. at 754, 9 L.Ed.2d at 782. *See also Pruitt v. Housewright,* 624 F.2d 851, 852 (8th Cir. 1980), *Chapman v. California,* 423 F.2d 682, 683 (9th Cir.), *cert. den.,* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970).

With this test in mind, the Court now turns to the question of whether the allegations in the affidavit supporting petitioner's motion, if taken as true, would establish the right to petitioner's release. In that affidavit, an attorney in the firm of petitioner's attorney asserts that he has made contact with another young black male who was detained by officers of the Chattanooga Police Department on the date in question. The witness stated that he and two other black males were riding in a green 1963 Chevrolet when they were detained by officers of the Chattanooga Police Department. The three men were told to step out of the car and were frisked for possible weapons. When asked why the men were being stopped, officers responded that they fitted the description the police had concerning a robbery. The three men were taken downtown and placed in a lineup consisting of six to eight black males who to the witness' information and belief had been stopped and detained in the same manner. The petitioner was in the same lineup. The witness also indicated that the police had detained several other black males just because they were black (Court File No. 18, p. 2, paragraph 4).

The Court concludes that even if these allegations are taken as true, combined with the testimony in the state court record concerning the circumstances of petitioner's arrest, they would not establish petitioner's right to release. As to the detention of

petitioner's "new" witness, the record shows that police were looking for three black males in a 1963 or 1964 blue Buick or Oldsmobile (Tr. 184). The witness and his two companions were riding in a green 1963 Chevrolet. These three men and their car were sufficiently close enough to the description provided the police to discount petitioner's allegations of "dragnet."

Furthermore, the trial record shows that circumstances surrounding petitioner's arrest did not indicate a "dragnet" approach by the police. The Court notes the following significant factors considered by the Tennessee Supreme Court:

1. The defendant generally fit the description of one of the robbers, i.e., a "very tall" black male;

2. The arrest was reasonably close to the robbery, both in time and space;

3. When spotted the defendant looked surprised, "scooted down and bent over" in a suspicious manner; and

4. Officer Newson knew the defendant was a heroin addict and had a criminal record and very likely was armed. *Griffin v. State*, 604 S.W.2d 40, 42 (Tenn.1980).

The Tennessee Supreme Court went on to hold that these factors constitute grounds for "a reasonable suspicion, based on objective facts, that the individual [was] involved in criminal activity," quoting *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). The Court notes the applicability of *Brown* to the case at bar and concludes that the stop of car in which petitioner was riding falls within that standard and that petitioner was stopped as a result of his own suspicious activity and not because of a "dragnet" initiated by the Chattanooga Police Department. This conclusion, considered with the Court's previous conclusion that the new evidence petitioner offers, if taken as true, did not indicate a police dragnet, does not meet the test established in *Morris, supra.* Therefore, this ground will be dismissed.

As the Court has found petitioner's new evidence would not establish the right to his release under *Morris, supra,* an order will enter in accordance with this memorandum, denying the petitioner's motion for reconsideration and affirming the Court's prior order dismissing the petition as being without merit.