# MOORE v. ILLINOIS

No. 76–5344.   Argued October 3, 1977—Decided December 12, 1977

*Patrick J. Hughes, Jr.,* argued the cause and filed briefs for petitioner.

*Charles H. Levad,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the briefs was *William J. Scott,* Attorney General.

MR. JUSTICE POWELL delivered the opinion of the Court.

Petitioner was convicted of rape and related offenses. At trial the complaining witness testified on direct examination by the prosecution that she had identified petitioner at a preliminary hearing at which he was not represented by counsel. The State Supreme Court affirmed petitioner's convictions, and the Federal District Court and Court of Appeals denied habeas corpus relief. We granted certiorari because of an apparent conflict between the decisions below and our holdings with respect to the right to counsel at corporeal identifications in *United States* v. *Wade,* 388 U. S. 218 (1967); *Gilbert* v. *California,* 388 U. S. 263 (1967); and *Kirby* v. *Illinois,* 406 U. S. 682 (1972). We reverse.

I

The victim of the offenses in question lived in an apartment on the South Side of Chicago. Shortly after noon on December 14, 1967, she awakened from a nap to find a man standing in the doorway to her bedroom holding a knife. The man entered the bedroom, threw her face down on the bed, and

choked her until she was quiet. After covering his face with a bandana, the intruder partially undressed the victim, forced her to commit oral sodomy, and raped her. Then he left, taking a guitar and a flute from the apartment.

When police arrived, the victim gave them a description of her assailant. Although she did not know who he was and had seen his face for only 10 to 15 seconds during the attack, she thought he was the same man who had made offensive remarks to her in a neighborhood bar the night before. She also gave police a notebook she had found next to her bed after the attack.

In the week that followed, police showed the victim two groups of photographs of men. From the first group of 200 she picked about 30 who resembled her assailant in height, weight, and build. From the second group of about 10, she picked two or three. One of these was of petitioner. Police also found a letter in the notebook that the victim had given them. Investigation revealed that it was written by a woman with whom petitioner had been staying. The letter had been taken from the woman's home in her absence, and petitioner appeared to be the only other person who had access to the home.

On the evening of December 20, 1967, police arrested petitioner at his apartment and held him overnight pending a preliminary hearing to determine whether he should be bound over to the grand jury and to set bail. The next morning, a policeman accompanied the victim to the Circuit Court of Cook County (First Municipal District) for the hearing. The policeman told her she was going to view a suspect and should identify him if she could. He also had her sign a complaint that named petitioner as her assailant. At the hearing, petitioner's name was called and he was led before the bench. The judge told petitioner that he was charged with rape and deviate sexual behavior. The judge then called the victim, who had been in the courtroom waiting for the case to be called, to come before the bench. The State's Attorney stated

that police had found evidence linking petitioner with the offenses charged. He asked the victim whether she saw her assailant in the courtroom, and she pointed at petitioner. The State's Attorney then requested a continuance of the hearing because more time was needed to check fingerprints. The judge granted the continuance and fixed bail. Petitioner was not represented by counsel at this hearing, and the court did not offer to appoint counsel.

At a subsequent hearing, petitioner was bound over to the grand jury, which indicted him for rape, deviate sexual behavior, burglary, and robbery. Counsel was appointed, and he moved to suppress the victim's identification of petitioner because it had been elicited at the preliminary hearing through an unnecessarily suggestive procedure at which petitioner was not represented by counsel.[1] After an evidentiary hearing the trial court denied the motion on the ground that the prosecution had shown an independent basis for the victim's identification.

At trial, the victim testified on direct examination by the prosecution that she had identified petitioner as her assailant at the preliminary hearing. She also testified that the defendant on trial was the man who had raped her. The prosecution's other evidence linking petitioner with the crimes was the letter found in the victim's apartment. Defense counsel stipulated that petitioner had taken the letter from his woman friend's home, but he presented evidence that petitioner might have lost the notebook containing the letter at the neighborhood bar the night before the attack. The defense theory was that the victim, who also was in the bar that night, could have picked up the notebook by mistake and taken it home.

---

[1] Counsel for petitioner explicitly drew the court's attention to our then recent decision in *United States* v. *Wade*, 388 U. S. 218 (1967): "If we may look at the Wade case, Your Honor, it has as its holding, Your Honor, the requirement that a defendant have an attorney at an identification procedure . . . ." Trial Transcript 132.

The defense also called witnesses who testified that petitioner was with them in a college lunchroom in another part of Chicago at the time the attack was committed.

The jury found petitioner guilty on all four counts, thus rejecting his theory and alibi. The trial court sentenced him to 30 to 50 years in prison. The Illinois Supreme Court affirmed. *People* v. *Moore,* 51 Ill. 2d 79, 281 N. E. 2d 294 (1972). It rejected petitioner's argument that the victim's identification testimony should have been excluded, on the ground that the prosecution had shown an "independent basis" for the identification. *Id.,* at 86, 281 N. E. 2d, at 298. After this Court denied certiorari, 409 U. S. 979 (1972), petitioner sought a writ of habeas corpus from the Federal District Court. He contended that admission of the identification testimony at trial violated his Sixth and Fourteenth Amendment rights. Relying on the transcript from the state proceedings, the District Court denied the writ in an unpublished opinion, again on the ground that the prosecution had shown an independent basis for the identification. App. 31–35. The Court of Appeals for the Seventh Circuit affirmed in an unpublished opinion, *United States ex rel. Moore* v. *Illinois,* 534 F. 2d 331 (1976), and we granted certiorari. 429 U. S. 1061 (1977).

## II

*United States* v. *Wade,* 388 U. S. 218 (1967), held that a pretrial corporeal identification conducted after a suspect has been indicted is a critical stage in a criminal prosecution at which the Sixth Amendment entitles the accused to the presence of counsel. The Court emphasized the dangers inherent in a pretrial identification conducted in the absence of counsel. Persons who conduct the identification procedure may suggest, intentionally or unintentionally, that they expect the witness to identify the accused. Such a suggestion, coming from a police officer or prosecutor, can lead a witness to make

a mistaken identification. The witness then will be predisposed to adhere to this identification in subsequent testimony at trial. *Id.*, at 229, 235–236. If an accused's counsel is present at the pretrial identification, he can serve both his client's and the prosecution's interests by objecting to suggestive features of a procedure before they influence a witness' identification. *Id.*, at 236, 238. In view of the "variables and pitfalls" that exist at an uncounseled pretrial identification, *id.*, at 235, the *Wade* Court reasoned:

> "[T]he first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself. The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness—'that's the man.'" *Id.*, at 235–236.

*Wade* and its companion case, *Gilbert* v. *California*, 388 U. S. 263 (1967), also considered the admissibility of evidence derived from a corporeal identification conducted in violation of the accused's right to counsel. In *Wade*, witnesses to a robbery who had identified the defendant at an uncounseled pretrial lineup testified at trial on direct examination by the prosecution that he was the man who had committed the robbery. The prosecution did not elicit from the witnesses the fact that they had identified the defendant at the pretrial lineup. Nevertheless, because of the likelihood that the witnesses' in-court identifications were based on their observations of the defendant at the uncounseled lineup rather than at the scene of the crime, the Court held that this testimony should have been excluded unless the prosecution could "establish by clear and convincing evidence that the in-court identifications

were based upon observations of the suspect other than the lineup identification." 388 U. S., at 240.[2]

*Gilbert* differed from *Wade* in one critical respect. In *Gilbert* the prosecution did elicit testimony in its case-in-chief that witnesses had identified the accused at an uncounseled pretrial lineup. The Court recognized that such testimony would "enhance the impact of [a witness'] in-court identification on the jury and seriously aggravate whatever derogation exists of the accused's right to a fair trial." 388 U. S., at 273–274. Because "[t]hat testimony [was] the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality[,]' *Wong Sun* v. *United States,* 371 U. S. 471, 488," the prosecution was "not entitled to an opportunity to show that the testimony had an independent source." *Id.,* at 272–273; see also *Wade, supra,* at 240 n. 32. The Court announced this exclusionary rule in the belief that such a sanction is necessary "to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup." *Gilbert, supra,* at 273. The Court therefore reversed the conviction and remanded to the state court for a determination of whether admission of this evidence was harmless constitutional error under *Chapman* v. *California,* 386 U. S. 18 (1967). 388 U. S., at 274.

In *Kirby* v. *Illinois,* 406 U. S. 682 (1972), the plurality opinion made clear that the right to counsel announced in *Wade* and *Gilbert* attaches only to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

---

[2] Among the factors to be considered in making this determination are "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." 388 U. S., at 241.

406 U. S., at 689. This is so because the initiation of such proceedings "marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Id.*, at 690. Thus, in *Kirby* the plurality held that the prosecution's evidence of a robbery victim's one-on-one stationhouse identification of an uncounseled suspect shortly after the suspect's arrest was admissible because adversary judicial criminal proceedings had not yet been initiated. In such cases, however, due process protects the accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures. *Id.*, at 690–691; *Neil* v. *Biggers*, 409 U. S. 188 (1972); *Stovall* v. *Denno*, 388 U. S. 293 (1967); see generally *Manson* v. *Brathwaite*, 432 U. S. 98 (1977).[3]

## III

In the instant case, petitioner argues that the preliminary hearing at which the victim identified him marked the initiation of adversary judicial criminal proceedings against him. Hence, under *Wade, Gilbert,* and *Kirby,* he was entitled to the presence of counsel at that confrontation. Moreover, the

---

[3] In *United States* v. *Ash*, 413 U. S. 300 (1973), the Court held that the Sixth Amendment does not require that defense counsel be present when a witness views police or prosecution photographic arrays. A photographic showing, unlike a corporeal identification, is not a "trial-like adversary confrontation" between an accused and agents of the government; hence, "no possibility arises that the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary." *Id.*, at 317. Moreover, even without attending the prosecution's photographic showing, defense counsel has an equal chance to prepare for trial by presenting his own photographic displays to witnesses before trial. But "[d]uplication by defense counsel is a safeguard that normally is not available when a formal confrontation occurs." *Id.*, at 318 n. 10. An accused nevertheless is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable identifications elicited through unnecessarily suggestive photographic displays. *Id.*, at 320; *Manson* v. *Brathwaite*; *Simmons* v. *United States*, 390 U. S. 377 (1968).

prosecution introduced evidence of this uncounseled corporeal identification at trial in its case-in-chief. Petitioner contends that under *Gilbert,* this evidence should have been excluded without regard to whether there was an "independent source" for it.

The Court of Appeals took a different view of the case. It read *Kirby* as holding that evidence of a corporeal identification conducted in the absence of defense counsel must be excluded only if the identification is made after the defendant is *indicted.* App. 45–46. Such a reading cannot be squared with *Kirby* itself, which held that an accused's rights under *Wade* and *Gilbert* attach to identifications conducted "at or after the initiation of adversary judicial criminal proceedings," including proceedings instituted "by way of formal charge [or] preliminary hearing." 406 U. S., at 689. The prosecution in this case was commenced under Illinois law when the victim's complaint was filed in court. See Ill. Rev. Stat., ch. 38, § 111 (1975). The purpose of the preliminary hearing was to determine whether there was probable cause to bind petitioner over to the grand jury and to set bail. §§ 109–1, 109–3. Petitioner had the right to oppose the prosecution at that hearing by moving to dismiss the charges and to suppress the evidence against him. § 109–3 (e). He faced counsel for the State, who elicited the victim's identification, summarized the State's other evidence against petitioner, and urged that the State be given more time to marshal its evidence. It is plain that "the government ha[d] committed itself to prosecute," and that petitioner found "himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby, supra,* at 689. The State candidly concedes that this preliminary hearing, marked the "initiation of adversary judicial criminal proceedings" against petitioner, Brief for Respondent 8, and n. 1; Tr. of Oral Arg. 32, 34, and it hardly could contend otherwise. The Court of Appeals therefore erred in holding

that petitioner's rights under *Wade* and *Gilbert* had not yet attached at the time of the preliminary hearing.

The Court of Appeals also suggested that *Wade* and *Gilbert* did not apply here because the "in-court identification could hardly be considered a line-up." App. 45. The meaning of this statement is not entirely clear. If the court meant that a one-on-one identification procedure, as distinguished from a lineup, is not subject to the counsel requirement, it was mistaken. Although *Wade* and *Gilbert* both involved lineups, *Wade* clearly contemplated that counsel would be required in both situations: "The pretrial confrontation for purpose of identification may take the form of a lineup . . . or presentation of the suspect alone to the witness . . . . It is obvious that risks of suggestion attend either form of confrontation . . . ." 388 U. S., at 229; see also *id.*, at 251 (WHITE, J., dissenting in part and concurring in part); cf. *Stovall* v. *Denno, supra; Kirby* v. *Illinois.* Indeed, a one-on-one confrontation generally is thought to present greater risks of mistaken identification than a lineup. *E. g.,* P. Wall, Eye-Witness Identification in Criminal Cases 27–40 (1965); Williams & Hammelmann, Identification Parades—I, Crim. L. Rev. 479, 480–481 (1963). There is no reason, then, to hold that a one-on-one identification procedure is not subject to the same requirements as a lineup.

If the court believed that petitioner did not have a right to counsel at this identification procedure because it was conducted in the course of a judicial proceeding, we do not agree. The reasons supporting *Wade*'s holding that a corporeal identification is a critical stage of a criminal prosecution for Sixth Amendment purposes apply with equal force to this identification. It is difficult to imagine a more suggestive manner in which to present a suspect to a witness for their critical first confrontation than was employed in this case. The victim, who had seen her assailant for only 10 to 15 seconds, was asked to make her identification after she was told that she

was going to view a suspect, after she was told his name and heard it called as he was led before the bench, and after she heard the prosecutor recite the evidence believed to implicate petitioner.[4]  Had petitioner been represented by counsel, some or all of this suggestiveness could have been avoided.[5]

---

[4] Immediately before the State's Attorney asked the victim to identify petitioner, he stated:

"This is an allegation of rape and deviate sexual assault. It's a home invasion of an apartment in Hyde Park and the victim was raped and forced to commit an oral copulation.  Taken from her was a guitar and other instruments.  When the defendant was arrested upon an arrest warrant signed by the Judge of the Court, the articles, the guitar and other instruments were found in the apartment, as were the clothes described of the man that attacked her that day."  App. 48–49.

It appears from the record that although a guitar and a flute were found in petitioner's apartment when he was arrested, they were not the ones taken from the victim's apartment and they were not introduced into evidence at petitioner's trial.  Transcript of Proceedings at Hearing of Feb. 5, 1968, p. 10; Trial Transcript 44–45, 400–401.  Neither was any clothing.

[5] For example, counsel could have requested that the hearing be postponed until a lineup could be arranged at which the victim would view petitioner in a less suggestive setting.  See, *e. g., United States* v. *Ravich,* 421 F. 2d 1196, 1202–1203 (CA2), cert. denied, 400 U. S. 834 (1970); *Mason* v. *United States,* 134 U. S. App. D. C. 280, 283 n. 19, 414 F. 2d 1176, 1179 n. 19 (1969).  Short of that, counsel could have asked that the victim be excused from the courtroom while the charges were read and the evidence against petitioner was recited, and that petitioner be seated with other people in the audience when the victim attempted an identification. See *Allen* v. *Rhay,* 431 F. 2d 1160, 1165 (CA9 1970), cert. denied, 404 U. S. 834 (1971).  Counsel might have sought to cross-examine the victim to test her identification before it hardened.  Cf. *Haberstroh* v. *Montanye,* 493 F. 2d 483, 485 (CA2 1974); *United States ex rel. Riffert* v. *Rundle,* 464 F. 2d 1348, 1351 (CA3 1972), cert. denied *sub nom. Riffert* v. *Johnson,* 415 U. S. 927 (1974).  Because it is in the prosecution's interest as well as the accused's that witnesses' identifications remain untainted, see *Wade,* 388 U. S., at 238, we cannot assume that such requests would have been in vain.  Such requests ordinarily are addressed to the sound discretion of the court, see *United States* v. *Ravich, supra,* at 1203; we express no

In sum, we are unpersuaded by the reasons advanced by the Court of Appeals for distinguishing the identification procedure in this case from those considered in *Wade* and *Gilbert*. Here, as in those cases, petitioner's Sixth Amendment rights were violated by a corporeal identification conducted after the initiation of adversary judicial criminal proceedings and in the absence of counsel. The courts below thought that the victim's testimony at trial that she had identified petitioner at an uncounseled pretrial confrontation was admissible even if petitioner's rights had been violated, because there was an "independent source" for the victim's identification at the uncounseled confrontation. 51 Ill. 2d, at 86, 281 N. E. 2d, at 298; App. 35 (District Court), 45–46 (Court of Appeals).[6] But *Gilbert* held that the prosecution cannot buttress its case-in-chief by introducing evidence of a pretrial identification made in violation of the accused's Sixth Amendment rights, even if it can prove that the pretrial identification had an independent source. "That testimony is the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality,' " *Gilbert,* 388 U. S., at 272–273, and the prosecution is "therefore not entitled to an opportunity to show that the testimony had an independent source." *Id.,* at 273. Because the prosecution made use of such testimony

opinion as to whether the preliminary hearing court would have been required to grant any such requests.

[6] The existence of an "independent source" was thought to be demonstrated by the victim's selection of a picture of petitioner from the second photographic array. The courts below and the parties here have not been certain as to how many pictures the victim actually selected from that array. Although there is some ambiguity in the record, compare Trial Transcript 110–111, 113–114, 167, 290–292, 294, 307–308, 421, 454, with *id.,* at 155–156, 158, 231–232, we think a fair reading indicates that the victim selected more than one photograph and that she did not make a positive identification of petitioner from them. But resolution of this factual issue is not necessary to our decision in this case.

in this case, petitioner is entitled to the benefit of the strict rule of *Gilbert*.

## IV

In view of the violation of petitioner's Sixth and Fourteenth Amendment right to counsel at the pretrial corporeal identification, and of the prosecution's exploitation at trial of evidence derived directly from that violation, we reverse the judgment of the Court of Appeals and remand for a determination of whether the failure to exclude that evidence was harmless constitutional error under *Chapman* v. *California*, 386 U. S. 18 (1967). See *Gilbert, supra,* at 274. That court also will be free on remand to re-examine the other issues presented by the petition, upon which we do not pass.[7]

*Reversed and remanded.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE REHNQUIST, concurring.

In 1964, this Court held that in certain limited circumstances a statement given to police after persistent questioning would be suppressed at trial if the suspect had repeatedly requested, and been denied, an opportunity to consult with his attorney. *Escobedo* v. *Illinois,* 378 U. S. 478, 490–491. At the time, there were intimations that this ruling rested largely on the Sixth Amendment guarantee of right to counsel at critical stages of the criminal proceeding. *Id.,* at 484–485, 486. Shortly thereafter, however, the Court perceived "that

---

[7] In addition to his *Gilbert* argument, petitioner urges that the victim's in-court identification was tainted by the prior uncounseled identification, see *Wade;* that the in-court identification was the unreliable product of an unnecessarily suggestive identification procedure and should have been excluded under the Due Process Clause of the Fourteenth Amendment, see *Manson* v. *Brathwaite,* 432 U. S. 98 (1977); and that the trial court's denial of a transcript of the preliminary hearing was prejudicial constitutional error, see *Roberts* v. *LaVallee,* 389 U. S. 40 (1967).

the 'prime purpose' of *Escobedo* was not to vindicate the constitutional right to counsel as such, but, like *Miranda,* 'to guarantee full effectuation of the privilege against self-incrimination . . . .' *Johnson* v. *New Jersey,* 384 U. S. 719, 729." *Kirby* v. *Illinois,* 406 U. S. 682, 689 (1972) (STEWART, J.). Cf. *Darwin* v. *Connecticut,* 391 U. S. 346, 349 (1968). Accordingly, *Escobedo* was largely limited to its facts. See *Johnson* v. *New Jersey,* 384 U. S. 719, 733–734 (1966); *Kirby* v. *Illinois, supra; Frazier* v. *Cupp,* 394 U. S. 731, 739 (1969); *Michigan* v. *Tucker,* 417 U. S. 433, 438 (1974). This, of course, left open the possibility of examining the voluntariness of a confession under a more appropriate standard—the totality of the circumstances. Cf. *Clewis* v. *Texas,* 386 U. S. 707 (1967).

I believe the time will come when the Court will have to re-evaluate and reconsider the *Wade-Gilbert** rule for many of the same reasons. The rule was established to ensure the accuracy and reliability of pretrial identifications and the Court will have to decide whether a *per se* exclusionary rule should still apply or whether *Wade-Gilbert* violations, like other questions involving the reliability of pretrial identification, should be judged under the totality of the circumstances. Cf. *Manson* v. *Brathwaite,* 432 U. S. 98, 106 (1977); cf. *Kirby* v. *Illinois, supra,* at 690–691; *Simmons* v. *United States,* 390 U. S. 377, 383 (1968); *Stovall* v. *Denno,* 388 U. S. 293, 302 (1967). However, since the State has chosen not to press this point and because I believe the Court's opinion is a correct reading of *Wade* and *Gilbert,* I concur in the opinion and judgment of the Court.

MR. JUSTICE BLACKMUN, concurring in the result.

I concur in the result, and I join the Court in remanding the case for a determination as to whether the adjudged error was

---

*United States* v. *Wade,* 388 U. S. 218 (1967); *Gilbert* v. *California,* 388 U. S. 263 (1967).

harmless. On the record of this case, the conclusion that it was harmless seems to me to be almost inevitable; that, however, is for the courts below to decide in the first instance.

I feel, furthermore, that the Court in its opinion has made more out of this case than its facts warrant. As the Court points out, *ante,* at 228, the State of Illinois has conceded, Brief for Respondent 8, and n. 1; Tr. of Oral Arg. 32, 34, that the so-called preliminary hearing on December 21, 1967, at which the victim testified, was the initiation of adversary judicial criminal proceedings against petitioner. At trial, the victim testified that at that hearing she had identified petitioner as her assailant. This being so, the ban of *Gilbert* v. *California,* 388 U. S. 263 (1967), applies in full force and in itself would require the remand the Court orders. With the State's concession, I see no need to wrestle with the issue whether what took place on December 21 marked the initiation of formal proceedings against petitioner in the sense of *Kirby* v. *Illinois,* 406 U. S. 682 (1972), and thereby possibly to become entangled with the ghost, unmentioned by the Court, of the holding in *Coleman* v. *Alabama,* 399 U. S. 1 (1970), determined not to be retroactive in *Adams* v. *Illinois,* 405 U. S. 278 (1972).

One last word: I disassociate myself from the implication— twice appearing in the Court's opinion, *ante,* at 222 and at 229—that there is something insignificant or unreliable about a rape victim's observation during the crime of the facial features of her assailant when that observation lasts "only 10 to 15 seconds." Time, of course, is always a comparative matter. Fifteen seconds perhaps would mean little in the identification of scores of separate individuals participating in an illegal riot. But 10 to 15 seconds of observation of the face of a rapist at midday by his female victim during the commission of the crime by no means is insufficient to leave an accurate and indelible impression on the victim. One need only observe another person's face for 10 seconds by the clock to know this.

To the resisting woman, the 10 to 15 seconds would seem endless. No female victim of a rape, given that period of daylight observation, will ever believe otherwise. I therefore cannot be a party to the Court's degradation, and almost literal dismissal, of so vital an observation.