Steven David ALLEN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted on Briefs: Sept. 21, 1982.

Decided: Dec. 8, 1982.

Karl Haller and William B. Wilgus, Asst. Public Defenders, Georgetown, for defendant below, appellant.

Gary A. Myers, Deputy Atty. Gen., Georgetown, for plaintiff below, appellee.

Before McNEILLY, HORSEY and MOORE, JJ.

McNEILLY, Justice:

Defendant, Steven David Allen, appeals his conviction by a Superior Court jury of First Degree Rape, First Degree Kidnapping and Terroristic Threatening. We turn initially to the pertinent facts.

## I

While driving to work on August 30, 1981 the victim, a young woman, was faced with an open drawbridge on the road entering Rehoboth. To avoid being late for work, she parked her car and began to walk the several blocks to her job. As she was leaving her car, she was approached by a young man, the defendant, who told her that the area had been frequently vandalized and that he would watch the car for her until she got off work. The young man walked with the victim, talking to her. After about ten minutes, he stopped walking with the victim and sat down outside a restaurant. The victim continued along towards her place of employment.

Eight hours later, after completing her shift at work, the victim walked back to her car in order to drive home. As she approached the car, she heard a voice call to her which she recognized as that of the young man she spoke to earlier. As she was unlocking the car door, the young man grabbed her and dragged her into the bushes where, despite her resistance, he threw her to the ground and tore off her pants and underclothes. When she screamed, he struck her in the face and said "Do you want to live?" As the victim cried, he raped her and then fled, taking four dollars from her.

The next morning, the victim reported the rape to the State Police. After recounting the events, she gave the police a description of her assailant, describing his height, weight, facial features, hair style and clothing. With this description, a uniformed trooper went to the restaurant where the young man had sat down after talking to the victim the previous afternoon. There, the trooper saw the defendant who matched the description given by the victim. The trooper asked the defendant if he would voluntarily return to the police station for some questioning and he agreed.

As the defendant was walking across the parking lot of the police station with the trooper, the victim, sitting inside the troop, saw him through a window and identified him as her assailant. She repeated this identification when she saw him in the police station.

Defendant was given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and then made a statement, admitting the acts of sexual intercourse with the victim but arguing that the relationship was consensual.

Following a trial by Court, the defendant was found guilty of Rape in the First Degree, Kidnapping in the First Degree and Terroristic Threatening. He was subsequently sentenced to life imprisonment on the Rape charge, life imprisonment on the Kidnapping charge and two years' imprisonment on the Terroristic Threatening charge, sentences to run consecutively.

## II

As his first ground for reversal, defendant argues that his pre-complaint, pre-indictment identification by the victim, in the absence of counsel, was a violation of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution, and, therefore, his subsequent statement to the police must be suppressed. We find this contention without merit.

A person's right to counsel under the Sixth and Fourteenth Amendment of the United States Constitution attaches only to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Moore v. Illinois,* 434 U.S. 220, 226, 98 S.Ct. 458, 463, 54 L.Ed.2d 424 (1977)." This is so because the initiation of such proceedings marks the com-

mencement of the criminal prosecutions to which alone the explicit guarantees of the Sixth Amendment are applicable." *Moore,* 434 U.S. at 227, 98 S.Ct. at 464, citing *Kirby v. Illinois,* 406 U.S. at 690, 92 S.Ct. at 1882.

■ In this case, the defendant voluntarily went with the trooper to the police station. He was not placed under arrest until after the identification by the victim. The identification of the defendant by the victim, both from across the parking lot and in the stationhouse, occurred in the absence of any intentional confrontation, prior to the initiation of any formal criminal prosecution. Consequently, the defendant had no right to the presence of counsel at the identification and there is no reason to exclude his subsequent inculpatory statements.

Defendant's reliance on *State v. Jenkins,* Del.Super., 277 A.2d 703 (1971) and *Jenkins v. State,* Del.Supr., 281 A.2d 148, 150 (1971) is inapposite. In both these cases the identifications were the result of suggestive one-on-one pre-arranged confrontations. It was the suggestive and unreliable identifications which required the presence of counsel. *See Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In the instant case, no argument is made that the identifications were so suggestive and unreliable so as to require the presence of counsel.

### III

Defendant's second contention in support of his appeal is that the evidence presented at trial was insufficient to sustain a conviction of Terroristic Threatening under 11 *Del.C.* § 621(1). This argument is without merit.

A person commits Terroristic Threatening when "he threatens to commit any crime likely to result in death or in serious injury to person or property." 11 *Del.C.* § 621(1). Defendant argues that no crime implied in the threat was alleged or proven to have been committed, and no evidence was introduced to show that the threat was

likely to result in death or serious injury. The only basis for the conviction was defendant's statement to the victim, "Do you want to live?", made in an effort to keep the victim quiet during the rape.

■ The statute imposes criminal liability for the use of words, changing the common law rule that words alone do not constitute an assault. Del. Criminal Code with Commentary, § 621 at 173 (1973). Even if the actor does not intend to actually carry out his threat, the threat itself creates certain identifiable injuries, e.g., mental distress or panic, that the Criminal Code should protect against. *See Model Penal Code* § 211.3 comment (1980). Thus, the crime is complete when the actor threatens a crime, the commission of which would reasonably entail death or serious physical or property injury. Whether the threatened act is completed is immaterial.

■ Just prior to the instant rape, the victim was attempting to resist the assault by screaming and struggling. In response to this resistance, the defendant stated to the victim "Do you want to live?" When taken in light of the factual surroundings in which they were spoken, we conclude that a rational trier of fact could find beyond a reasonable doubt that the defendant threatened conduct which was likely to result in death or serious injury to the victim. *E.g., Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Harris v. State,* Del.Supr., 305 A.2d 318 (1973).

### IV

■ Defendant next argues that the evidence presented at trial was insufficient to sustain a conviction of Rape in the First Degree. The crux of defendant's argument is that the ten minute conversation the defendant and victim had in the afternoon prior to the rape, resulted in their being voluntary social companions and as such a conviction for Rape in the First Degree is precluded.[1]

1. 11 *Del.C.* § 764 provides in pertinent part:

(1) A man is guilty of rape in the first degree when he intentionally engages in sexual in-

Defendant's argument is incorrect. It overlooks the language of § 764(2) which requires the voluntary social companionship must be "on the occasion of the crime". On the occasion of the crime, when the victim returned to her car after work at eleven o'clock at night, the victim was grabbed from behind and attacked by a virtual stranger, not someone whom she had chosen to accompany voluntarily immediately preceding the act of sexual intercourse.

Moreover, the ten minute conversation which took place on the afternoon prior to the rape does not itself fall within any reasonable interpretation of the "voluntary social companion" phrase. A ten minute conversation with a person who unilaterally decides to walk a few blocks with someone does not make these people voluntary social companions. At the time of the attack the victim and the defendant were strangers and as such the defendant could be convicted of Rape in the First Degree.

### V.

Defendant's fourth and final argument in support of his appeal is his assertion that his right to a fair trial was violat-ed when a Deputy Attorney General told the press during trial that the defendant was on furlough release from prison on a robbery conviction at the time of the rape.

While it is clear that the statement by the Deputy Attorney General was an obvious violation of Disciplinary Rule 7–107 D of the Delaware Code of Professional Responsibility,[2] this error does not rise to the level of reversible error. The defendant has made no showing that such a disclosure precluded a fair trial or prejudiced him. Indeed, the Trial Judge, who was the trier of fact, was unaware of this information, until it was brought forward by the defense.

For the reasons stated above, the judgment of the Superior Court is

**AFFIRMED.**

---

tercourse with a female without her consent, and

(2) The victim was not the defendant's voluntary social companion on the occasion of the crime and had not previously permitted him sexual contact.

2. Disciplinary Rule 7–107(D) provides:

(D) During the selection of a jury or the trial of a criminal matter, a lawyer or law firm associated with the prosecution or defense of a criminal matter shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial, except that he may quote from or refer without comment to public records of the court in the case.