OPINION OF THE COURT
John Carey, J.
Defendant is charged with robbery in the second degree, robbery in the third degree and grand larceny in the fourth degree. A Wade hearing was held on February 23, 1990, pursuant to a decision/order of this court dated September 29, 1989. The sole witness was Jacob Brown, the alleged victim. *153 During the time that Brown was in the courtroom, defendant was located in a position where he could hear testimony but could not be seen by the witness.
There has been no lineup. The first time Brown will have a chance to identify defendant in person will be at trial when, if normal practice is followed, he will be seated next to his counsel at the defense table and may be the only black person in the room other than Brown and any jurors who are black. An identification from a single photograph shown to Brown by a police officer was ruled unduly suggestive. The photo had been produced after Brown asked whether the officer had one showing a brother of someone whose picture he had just picked from a police photo album.
Defense counsel reserved his right to move for a lineup out of court or for leave to have his client sit during Brown’s trial testimony among other similar-looking persons. In response the court stated: "Please put your request in writing and tell me exactly what you want and in the meantime I * * * make a factual finding that Mr. Brown had an adequate opportunity during the four floor elevator ride to provide a valid basis for him to make an in-court identification.” In so finding, the court was relying on decisions such as People v Washington (111 AD2d 418 [2d Dept 1985], lv denied 66 NY2d 768).
Defense counsel later asked the court to arrange for the presence at trial of additional persons resembling defendant, whom he described as being 25 years old, black, 5 feet 11 inches tall, weighing in excess of 200 pounds. The court replied that it had no facilities for meeting the request. Counsel then moved for an order "directing the People to arrange for a lineup identification of the Defendant to be held at the Police Station of the City of Mount Vernon.” In an attached affirmation, defense counsel added a request that the other participants in the lineup meet the description given by Brown in his testimony: "dark-skinned, about six feet and * * * about two hundred something pounds.” The court must now, in deciding defense counsel’s motion, determine under what circumstances Brown may make the permitted attempt to identify defendant.
In the absence of some arrangement such as a pretrial lineup, defendant will be in a precarious situation at trial respecting identification by Brown. When asked if he recognizes his assailant in the courtroom, Brown almost inevitably will point to the black man sitting at the defense table. The *154 United States Supreme Court has put this danger clearly: "It is difficult to imagine a more suggestive manner in which to present a suspect to a witness for their critical first confrontation than was employed in this case.” (Moore v Illinois, 434 US 220, 229 [1977].) The critical first confrontation that was employed in Moore (at 229-230) was for the victim to identify the accused at a preliminary hearing where he was not represented by counsel. "The victim, who had seen her assailant for only 10 to 15 seconds, was asked to make her identification after she was told that she was going to view a suspect, after she was told his name and heard it called as he was led before the bench, and after she heard the prosecutor recite the evidence believed to implicate petitioner.” The situation here is almost identical in all material respects. Brown is not to see just a suspect in court but a man already indicted. He knows defendant’s name, and all the evidence against defendant is known to him, since he is its source. He has been shown by police a single photo of defendant. The special danger when defendant is not only the sole man at the defense table but also the only black person in the courtroom was condemned as impermissibly suggestive by the Second Circuit in United States v Archibald (734 F2d 938 [1984]).
The Second Department recently made clear that it views pretrial lineups as being within the trial court’s discretion in People v Bradley (154 AD2d 609, 610 [1989]): "Although the defendant requested that he be permitted to participate in a lineup before this [identification] witness took the stand, the trial court did not improvidently exercise its discretion in denying his application. A criminal defendant does not have a constitutional right to participate in a lineup whenever he requests one * * *. In any event, the defendant’s application to participate in a lineup, which was brought in the middle of the trial, was untimely”. The Second Department went on to imply approval of a less drastic remedy for defendants than an out-of-court lineup (supra, at 610): "The record further indicates that at no time did the defense counsel suggest any alternative in-court identification procedure, such as having the defendant seated in the spectators’ section of the courtroom among other individuals of the same general appearance, which would have been less suggestive under the circumstances”. An earlier Second Department decision was marked by a thorough review of authorities on this range of problems in a dissent by Judge Titone. (People v Powell, 105 AD2d 712, 714-716 [1984], affd 67 NY2d 661.)
*155 The Second Circuit had earlier expressed approval of such measures where an identification witness had not participated in any pretrial lineup, noting that the defendants "failed to request a line-up or any other protective procedure, such as having the defendants sit in the audience among other individuals of the same general appearance, or having federal employees who fit their description sit near them at the defense table.” (United States v Brown, 699 F2d 585, 593 [1983].) "[T]he prosecutors should in our view have expressly offered a line-up to the defendants * * *. Similarly, the trial judge, when he was advised of the identification issue upon calling the case for trial, would have been better advised to direct the government to provide a line-up or an appropriate protective procedure upon the bank manager’s being called to identify the defendant at trial. * * * [Defendant’s] remedy is to move for a line-up order to assure that the identification witness will first view the suspect with others of like description rather than in the courtroom sitting alone at the defense table.” (699 F2d, at 594.)
The broadly recognized trial court discretion has in some instances been exercised by turning down defendants’ requests for special in-court arrangements. In United States v Williams (436 F2d 1166, 1168, 1169 [9th Cir 1970], cert denied 402 US 912), where an in-court lineup had been denied, the Court of Appeals, while acknowledging that "an identification witness —particularly if he has some familiarity with courtroom procedure — is quite likely to look immediately at the counsel table”, held that "Williams has failed to show any such abuse of the judge’s discretion”. The Ninth Circuit took note (at 1168) of the fact that: "Because of such potential suggestiveness, some trial judges have granted defense requests to place the defendant in an in-court lineup, or to seat the defendant in the courtroom audience, before and during the testimony of the prosecution’s identification witnesses.” The Third Circuit in United States v Edward (439 F2d 150, 151 [1971]) held it no abuse of "the sound discretion of the district court” to refuse to grant a defendant’s request "to sit among the spectators during the trial and especially during the testimony of the government’s identification witnesses.” The Seventh Circuit approved a trial court’s denial of an in-court lineup in United States ex rel. Clark v Fike (538 F2d 750, 755 [1976], cert denied 429 US 1064).
On the other hand, the granting of requests of this kind has *156 also been at least acquiesced in by appellate courts. The Third Circuit in United States v Moss (410 F2d 386, 387 [1969], cert denied 396 US 993), while not agreeing with defendant "that the Government is faced with the choice of providing a defendant with members of his race to sit with him or foregoing in-court identification”, noted without criticism that "the trial judge continued the trial so that the defense attorney might procure other members of defendant’s race to sit with him.” As it happened, the defendant "could find no one willing to do so”.
Another example of the exercise of a trial court’s discretion in favor of special arrangements is found in Allen v Rhay (431 F2d 1160, 1165 [9th Cir 1970], cert denied 404 US 834), where "the court ordered petitioner to be seated in the audience and the state’s identification witnesses were to attempt to identify him”. In addition, "the trial court arranged for an in-court identification line-up procedure whereby the petitioner and his co-defendant and three other persons were to be seated in chairs or standing behind the counsel table.” (431 F2d, at 1166.)
Finally, the Second Department in People v Simpson (125 AD2d 347, 348 [1986]) noted with apparent approval that the trial court "had even given the defendant the option of having Sealy view him in the holding pen with other male black inmates, outside the presence of the jury, to simulate the general reliability of a lineup.”
In light of these precedents, it is clear that this court has discretion to make arrangements to test Brown’s ability to identify defendant in some reasonable fashion that does not place excessive demands on the criminal justice system. The court’s earlier ruling that he may attempt to identify defendant at trial was conditioned on consideration of possible extra precautions to lessen the chance of an identification being induced by defendant’s being the only person seated at the counsel table with his lawyer. This is especially important where, as here, a single photograph of defendant has been shown by police to a victim who has never seen defendant before or since the incident, which cannot have lasted much more than one minute.
The police station lineup requested by defense counsel, while perhaps the most desirable arrangement from the standpoint of defendant, has been declined by the District Attorney. Rather than imposing on the authorities for the use of their *157 premises, the court will select an in-court method. Two possibilities appear from the above cases, (1) seating defendant among whatever audience members happen to be in court that day, and (2) surrounding him with look-alikes at the counsel table.
The first alternative has the disadvantage of involving members of the public. As noted in People v Grady (133 Misc 2d 211, 227 [Bronx County 1986], affd 125 AD2d 1011), "there is no authority to compel a third party to participate in an in-court lineup or to sit in the courtroom during the trial.” Members of the public might be reluctant to run the risk of being accused by an alleged robbery victim.
The second alternative would be more effective since it would utilize persons selected in advance for both their resemblance to defendant and their occupational protection against being suspected of crime if Brown points to one of them. For example, look-alikes could be chosen from among recruits at the Police Academy, as has been done with police station lineups.
The question remains whose should be the responsibility for securing the needed personnel and having them on hand at the proper time and place. Leaving it up to defendant puts an impossible burden, as has already been shown in this case and in Moss (410 F2d 386, supra). The court has no personnel on which to draw. The only possible sources of the needed manpower are the law enforcement authorities. A sufficient number of persons, as suggested by Allen v Rhay (431 F2d 1160, supra), would be three. All should resemble defendant, both physically and in dress.
Accordingly, upon reading and filing the letter of Joseph B. Hirschfield, Esq., attorney for defendant, dated February 27, 1990, the notice of motion and affirmation of Mr. Hirschfield dated March 8, 1990, and the affirmation in opposition of Assistant District Attorney Joseph M. Latino dated March 14, 1990 with accompanying memorandum of law, it is:
Ordered that Jacob Brown may be in the courtroom at defendant’s trial only when three black men in their mid-20’s, dark skinned, about six feet tall, weighing approximately 200 pounds, and dressed similarly to defendant, are seated with defendant in such a way that there is nothing significant to distinguish among the four men as to their appearance or location.