# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

UNPUBLISHED
July 6, 2017

v

TRAVIS TRAVON SAMMONS,

   Defendant-Appellant.

No. 332190
Saginaw Circuit Court
LC No. 15-041848-FC

Before: TALBOT, C.J., and BECKERING and M.J. KELLY, JJ.

PER CURIAM.

A jury convicted defendant, Travis Sammons, of conspiracy to commit open murder, MCL 750.157a.[1] The trial court sentenced him as a third habitual offender, MCL 769.11, to life in prison with the possibility of parole. Defendant appeals as of right. We affirm.

## I. BASIC FACTS

Defendant's conviction arises from the murder of Humberto Casas in the afternoon of June 21, 2015, in Saginaw, Michigan. Police charged defendant and codefendant, Dominique Ramsey, with the crime, and the same jury tried the two men. Two eyewitnesses testified to the fatal shooting at the trial. Rosie Watkins testified that she was driving north on Cumberland Street when she observed three men on the opposite side of the road. She testified that the first man shot the second man, who bent over, and the third man got into a vehicle while the first man continued shooting. Then the shooter got into the vehicle. Watkins described the vehicle as a gray or silver Jeep. Approximately 11 minutes after dispatch received a call regarding the shooting, police pulled over a Jeep matching that description. Watkins positively identified a photograph of the Jeep admitted into evidence at trial as the Jeep she saw at the shooting. In the Jeep were defendant and Ramsey.

---

[1] The jury acquitted defendant of open murder, MCL 750.316, possession of a firearm by a felon, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony, MCL 750.227b.

-1-

Dyjuan Jones, who was 16-years old at the time of the shooting, testified that he was riding in the backseat of his mother's car when he heard what sounded like three firecrackers going off. He looked in the direction of the sound and witnessed the shooting, including the assailant's firing at least seven more shots into the victim, who was rolling from the sidewalk into the street in an apparent attempt to avoid being hit.[2] Jones was approximately 20 to 25 feet away from the shooting. He, too, observed a gray Jeep at the scene that he agreed looked similar to the one in the photograph identified by Watkins.

The prosecution produced a composite video made from nine or ten surveillance tapes that depicted a silver Jeep Commander starting from the corner where the homicide occurred to the location where defendant and Ramsey were detained after a traffic stop. Jones described the shooter as an African-American male wearing a white T-shirt. Michigan State Police Sergeant David Rivard testified that Jones identified defendant as the shooter at a showup conducted at the police station a few hours after the shooting. However, Jones maintained that he did not identify defendant while at the police station.

The jury found both defendant and Ramsey guilty of conspiracy to commit open murder. Both men filed motions for a directed verdict or a new trial. The trial court denied defendant's motion, but granted Ramsey's, holding that there was insufficient evidence to convict him.[3] This appeal ensued.

## II. ADMISSION OF IDENTIFICATION TESTIMONY

On appeal, defendant contends that the trial court clearly erred by denying his motion to suppress the testimony about Jones's identification of defendant at a police-station showup.[4] This Court reviews a trial court's determination in a suppression hearing regarding the admission of identification evidence for clear error. See *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). The Court reviews the trial court's findings of fact for clear error, *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005), and its rulings on questions of law, including constitutional issues, de novo, *People v Keller*, 479 Mich 467, 473-474; 739 NW2d 505 (2007).

---

[2] Felicia Little, Jones' mother, testified that she was driving northbound on Cumberland when she witnessed the victim walking along the sidewalk, at which time the assailant walked up from around a truck and started shooting the victim, who then fell into the southbound lane of the street. She testified that two trucks were parked at the scene, one burgundy and one silver or gray. She described Cumberland as a "two-lane very small street," and she was trying not to run over the victim as she attempted to get away from the shooting.

[3] We note that this Court had denied the prosecutor's application for leave to appeal the trial court's decision. *People v Ramsey*, unpublished order of the Court of Appeals, entered December 29, 2016 (Docket No. 334614). In lieu of granting leave to appeal, on May 2, 2017, our Supreme Court has remanded the case to this Court for consideration as on leave granted. *People v Ramsey*, ___ Mich ___; ___ NW2d ___ (Issued May 2, 2017, Docket No. 155321).

[4] A showup is "a police procedure in which a suspect is shown singly to a witness for identification, rather than as part of a lineup." *Black's Law Dictionary* (10th ed.), p 1591.

"A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995).

Defendant first asserts that absent exigent circumstances, police must use a corporeal lineup instead of a showup if a suspect is in custody. Defendant cites for support of this proposition *People v Kurylczyk*, 443 Mich 289, 298 n 8; 505 NW2d 528 (1993) and *People v Franklin Anderson*, 389 Mich 155, 186 n 22; 205 NW2d 461 (1973), overruled by *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004).[5] Defendant's reliance is misplaced. *Franklin Anderson*, 389 Mich at 186 n 22, primarily cites journal and law review articles in support of the position to which footnote 22 is appended, i.e., that to use "photographs beforehand to see whether important witnesses can identify an accused person whom they are afterwards going to see is to pursue a course which is not a proper one." *Franklin Anderson*, 389 Mich at 186, quoting an English case, *Rex v Gross*, 17 Crim App Rep 196, 197 (1923). Parenthetical explanations in the footnote indicate that the articles distinguish photographic from corporeal identification, and generally prefer the latter to the former. Defendant makes no meaningful argument regarding how any of the articles cited support his position, and nothing in the footnote indicates that the articles collected address corporeal showups of the type at issue. *Kurylczyk*, 443 Mich at 298 n 8, refers to a rule set forth by the *Franklin Anderson* Court that "prohibits the use of photographic lineups only when a suspect is in custody or when he can be compelled by the state to appear at a corporeal lineup." Again, however, defendant fails to explain how or why a rule that seems to prefer corporeal over photographic identification procedures applies to the instant case.

In short, the authorities cited by defendant are inapt to the extent that they address photographic showups rather than the corporeal showup conducted in this instance. Even assuming that the police should have conducted a lineup rather than a showup because defendant was in custody, defendant produced no caselaw holding that his identification at the showup must be excluded automatically.

Defendant next asserts that the showup violated his right to due process because it was impermissibly suggestive. Due process protects the accused against evidence obtained through unnecessarily suggestive identification procedures. *Hickman*, 470 Mich at 607, citing *Moore v Illinois*, 434 US 220, 227; 98 S Ct 458; 54 L Ed 2d 424 (1977). "In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. When examining the totality of the circumstances, a court should consider relevant factors such as "the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the

---

[5] *Hickman* impliedly overruled *Kurylczyk* to the extent that *Kurylczyk* relied upon *Franklin Anderson* for the proposition that a suspect in custody is entitled to counsel. See *People v Perry*, 317 Mich App 589; __ NW2d __ (2016).

-3-

length of time between the crime and the confrontation." *People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998).

In the case at bar, Jones and his mother went to the police station within four or five hours of the shooting to be interviewed separately regarding the incident. At some point, Rivard asked Jones to walk down the hallway and look left and right into two interview rooms. Jones observed one male seated in each room. According to Rivard, Jones identified the man in Room 2—i.e., defendant—as the shooter. Defendant moved to suppress the alleged identification that Jones made of him, arguing that the showup violated his right to counsel and that the police should have held a lineup because he was in custody. Relying on *Hickman*, the trial court ruled that defendant was not denied the right to counsel because that right attaches only at or after the initiation of adversarial proceedings, and the showup occurred before defendant was charged with any crime. The court also held that the showup was reliable and declined to suppress the identification based on the totality of the circumstances even though defendant was shown to Jones individually.

Defendant contends on appeal that the showup was unduly suggestive, and thus violative of his due-process rights, because the police singled him out by presenting him to Jones alone in an interview room. The fact that a procedure is suggestive does not necessarily render it constitutionally defective. *Kurylczyk*, 443 Mich at 306. Rather, the procedure is defective only if under the totality of the circumstances there is a substantial likelihood of misidentification. *Id*. at 302. An identification procedure can be unduly suggestive when a witness is led to believe that the police have apprehended the right person or where the witness is shown only one person or a group in which one person is singled out. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).

In the case at bar, although defendant was singled out to the extent that he was alone in an interview room, he was unrestrained and wearing street clothes, and there were no improper suggestions from Rivard that the police had arrested anyone for the shooting or even that defendant and Ramsey were suspected to be involved in the shooting. In fact, Jones agreed that Rivard did not indicate who the men were and only asked him to see if he knew who was in the rooms, and if so, how he knew them.[6] Thus, to the extent that defendant's appearing in a room

---

[6] Rivard testified at trial that he did not indicate to Jones that he had any knowledge or information regarding either one of the persons in the rooms with respect to their involvement in criminal activity. Rather, Jones was being interviewed by another detective about the shooting when he stepped into the hallway to use the restroom. Rivard then asked Jones to walk down the hallway, look into Interview Room 2 and Interview Room 3, and return to him, at which time he asked Jones if he knew who was in the two rooms, and if so, how he knew them. Rivard testified that he did not suggest to Jones, using facial expressions, gestures, or anything, that either defendant or Ramsey should be identified or were connected with anything. According to Rivard, Jones walked back to him and stated that the individual in Room 2—defendant—was the shooter.

alone was suggestive, there is no indication that comments or actions by the police rendered the identification procedure unnecessarily suggestive.

Further, we conclude that the trial court correctly reasoned that there was not a substantial likelihood of misidentification under the totality of the circumstances. Jones witnessed the shooting and identified defendant as the shooter within hours of the event, when the details of the crime would still be fresh in his mind.[7] Moreover, that Jones identified defendant as the shooter but not Ramsey as the getaway driver—or in any way involved, for that matter—supports the trial court's reasoning that Jones relied on his recollection of the event and was not influenced by the suggestiveness of the procedure.

Based on the foregoing, we conclude that the showup procedure was not "so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. Therefore, we are not left with a definite and firm conviction that the trial court erred by denying defendant's motion to suppress the identification, and defendant has not sustained his due process challenge.

Defendant also contends that the trial court erred by relying on MRE 801(d)(1)(C) to allow Rivard to testify that Jones had identified defendant, and that the testimony was more prejudicial than probative. Defendant raised this issue in the trial court in a motion in limine, but did not include it in his statement of issues presented to this Court. An argument is not properly presented for review if it is not within the scope of the question presented. See MCR 7.212(C)(5); *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003) (indicating that this Court can decline to consider an argument not within the scope of the question presented).

Even if defendant had properly presented this issue on appeal, he could not prevail because his argument lacks merit. Rivard's testimony about Jones's prior identification of defendant falls squarely within the ambit of MRE 801(d)(1)(C), which provides that a statement is not hearsay if "the declarant testifies at the trial and is subject to cross-examination concerning the statement," and the statement is "one of identification of a person made after perceiving the person[.]" See also *People v Malone*, 445 Mich 369, 377; 518 NW2d 418 (1994) ("As long as the statement is one of identification, Rule 801(d)(1)(C) permits the substantive use of any prior statement of identification by a witness as non-hearsay, provided the witness is available for cross-examination"). Jones testified at trial and was available for cross-examination; therefore, the requirements of MRE 801(d)(1)(C) were met.

The crux of defendant's argument is that admission of Rivard's testimony was more prejudicial than probative because the showup was improper. However, as discussed above, defendant did not demonstrate that the showup was improper or that there was a substantial likelihood of misidentification under the totality of the circumstances. Therefore, defendant's

---

[7] The shooting occurred shortly after Jones and his mother left church at around 1:00 p.m., and Jones asserted that he went to the police station where the showup occurred around 5:00 or 6:00 p.m.

argument that Rivard's testimony was more prejudicial than probative because of alleged errors relative to the showup identification procedure must fail.

### III. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant also contends that there was insufficient evidence to convict him of conspiracy and that his conviction was against the great weight of the evidence. This Court reviews a defendant's challenge to the sufficiency of the evidence de novo, *People v Cline*, 276 Mich App 634, 642, 741 NW2d 563 (2007), and a trial court's denial of a motion for a new trial based on the great weight of the evidence for an abuse of discretion, *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

When reviewing a challenge to the sufficiency of the evidence, this Court reviews "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009).

The jury convicted defendant of conspiracy to commit open murder, MCL 750.157a. MCL 750.157a provides that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ." In other words, "[a] criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). The individuals must specifically intend to combine to commit the underlying substantive offense, and evidence of the conspiracy can be established through circumstantial evidence including the acts and conduct of the parties. *Id*. While defendant was convicted of conspiracy to commit open murder, the underlying substantive offense was first-degree murder,[8] the elements of which are "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010); MCL 750.316(1)(a).

The trial court correctly concluded that there was sufficient evidence, when viewed in the light most favorable to the prosecution, for the jury to find defendant guilty of conspiracy to commit murder beyond a reasonable doubt. The acts of the parties established an implied

---

[8] The substantive offense underlying the conspiracy could not be conspiracy to commit second-degree murder. See *People v Hammond*, 187 Mich App 105, 108-109; 466 NW2d 335 (1991) (holding that conspiracy to commit second-degree murder is not recognized as a crime under Michigan law because conspiracy to commit such an offense is logically inconsistent).

agreement to commit first-degree murder. Witnesses Jones and Watkins both testified that they saw a man shoot the victim, and they saw a second man that they described as the driver of the getaway vehicle. Watkins described the vehicle as a gray or silver Jeep, and she identified a photograph of the Jeep stopped by police and in which were defendant and co-defendant Ramsey as the vehicle she saw that day. Sergeant Rivard testified that Jones identified defendant as the shooter after observing defendant in an interview room at the police station. Although the record contains no evidence of an explicit agreement, the coordinated actions of defendant and the driver of the getaway vehicle warrant a fair inference that defendant and the driver conspired together to accomplish the shooting, which they intended to result in the death of the victim.

There was also sufficient evidence of premeditation and deliberation, which can be established through the circumstances of the killing itself and the conduct after the homicide. *People v Robert Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Id*. In the instant case, there was testimony establishing that the victim was shot seven times in the head, back, abdomen, thigh and arm. Jones also testified that the shooter's gun appeared to jam briefly, and then he continued firing at the victim. The multiple shots and the fact that the shooter had to unjam the firearm support the inference that there was sufficient time for a "second look" to evaluate his actions.

Defendant also challenges the sufficiency of the evidence with respect to defendant's identity. Defendant is correct that Jones contradicted Rivard by testifying that he did not tell Rivard that defendant was the shooter. However, this is an issue of witness credibility and conflicting evidence, and the credibility of witnesses is a question for the jury to resolve while this Court resolves any conflict in evidence in the prosecutor's favor when examining the sufficiency of the evidence. *Harrison*, 283 Mich App at 378. Thus, that Jones contradicted Rivard's testimony does not warrant relief. Defendant also points out that the partial license plate of the vehicle given by Jones did not match the plate of the Jeep that defendant and Ramsey were stopped in,[9] and Little recalled seeing "trucks" at the scene but did not mention a Jeep. But Watkins testified that the vehicle she saw was a silver or gray "Jeep" and she positively identified the Jeep Commander defendant and Ramsey were in as the one she saw that day. Again, this Court resolves conflicting evidence in favor of the prosecution, *Harrison*, 283 Mich App at 378, so conflicting evidence regarding the getaway vehicle does not warrant relief. Defendant also points out that Jones testified that the shooter was bald, Watkins testified that she initially told police the shooter was bald but also testified that his hair was cut short, and Rivard agreed that defendant did not have a shaved or bald head when he was identified by Jones. Again, Rivard testified that Jones identified defendant, and conflicting testimony is resolved in favor of the prosecution. *Harrison*, 283 Mich App at 378. Thus, defendant brought to light no discrepancy that renders the evidence against him insufficient to secure a conviction after resolving conflicts in favor of the prosecution.

---

[9] Jones agreed that he "probably" told officers that the vehicle had a license plate with the letters "CE" or "GE" on it. The Jeep Commander defendant and Ramsey were stopped in had a license plate reading DFQ9593.

Defendant also challenges the sufficiency of the evidence with respect to the conspiracy asserting that there can be no one-man conspiracy, and that the trial court violated this rule when it allowed defendant's conviction to stand, but granted co-defendant Ramsey's motion for a directed verdict and acquitted Ramsey of conspiracy to commit murder. Defendant relies on *People v James Anderson*, 418 Mich 31, 35-36; 340 NW2d 634 (1983), in which our Supreme Court explained that the common-law "no one-man conspiracy" rule applies to Michigan's criminal conspiracy statute, MCL 750.157a. "That rule provides that 'if two are tried together for a conspiracy in which no additional persons are implicated, a verdict finding one guilty and the other not guilty requires a judgment of acquittal of both'." *Id*. at 36, quoting Perkins, Criminal Law (2d ed), p 622. The purpose of this rule was to prevent the enforcement of "inherently defective or inconsistent verdicts in conspiracy cases." *Id*. Defendant contends that the no one-man conspiracy rule applies to the instant case because he and Ramsey were tried jointly and found guilty of conspiracy, but the trial court granted Ramsey's renewed motion for a directed verdict.

Although the *James Anderson* Court addressed a hypothetical situation similar to the instant case, stating that if two conspirators were tried jointly and the case against the first was dismissed as a matter of law while a jury convicted the second, the no one-man conspiracy rule would be violated, *id*. at 37 n 1, the "no one-man conspiracy" rule does not apply to the specific facts of this case. This case is analogous to *People v Williams*, 240 Mich App 316; 614 NW2d 647 (2000). In *Williams*, the defendant contended that his conviction for conspiracy to possess with intent to deliver over 650 grams of cocaine violated the "no one-man conspiracy" rule because his codefendant was found guilty only of conspiracy to possess with intent to deliver more than 225 but less than 650 grams of cocaine. This Court reasoned that the verdicts did not violate the "no one-man conspiracy" rule because the codefendant was not acquitted, and the convictions were not sufficiently inconsistent, and rejected the defendant's claim "in its entirety because of the involvement of others." *Id*. at 329. This Court held that the "no one-man conspiracy" rule did not apply because the felony information charged that the defendant and the codefendant had conspired "together and with *others*," and there was evidence presented from which a jury could find beyond a reasonable doubt that the defendant did conspire with others aside from the codefendant to commit the underlying offense. *Id.* at 330-331.

In the case at bar, as in *Williams*, the felony information charged defendant with conspiring with Ramsey "and/or other unknown persons" to commit open murder. The trial court granted Ramsey's renewed motion for a directed verdict indicating that there was insufficient evidence to convict him of participation in the conspiracy as the driver of the getaway vehicle.[10] Nevertheless, there was testimony from Jones and Watkins that there was a

---

[10] The video compilation that tracked the Jeep after the shooting shows that it stopped for three minutes and 12 seconds at a house, at which time the passenger exited the vehicle, another person entered the house, and then multiple people walked out of the house. The video was shot from a distance and the individuals could not be clearly seen; further, the driver's side was not visible. The trial court concluded that it was impossible to determine whether Ramsey was the getaway driver in light of the stop at the house and because there was no direct evidence that he was involved. The trial court denied defendant's motion for a directed verdict or a new trial in

driver of the getaway vehicle, and the jury could find beyond a reasonable doubt that defendant conspired with the unidentified driver to commit murder. Thus, defendant's assertion that the "no one-man conspiracy" rule bars his conviction lacks merit.

Defendant also asserts that the jury would not have convicted him of conspiracy if it had known there was insufficient evidence to convict Ramsey of conspiracy. Further, defendant argues that the jury must have believed that defendant was not the shooter because it acquitted him of murder. While not explicitly stated, the crux of these arguments is that the verdict on the conspiracy charge is illogical or inconsistent with the verdict of not guilty on the other charges. However, consistency in jury verdicts is not required. *People v Vaughn*, 409 Mich 463, 465-466; 295 NW2d 354 (1980). Indeed, juries must make an independent evaluation of each element of a charge, and they are free to reach different conclusions concerning an identical element of two different offenses. *People v Goss (After Remand)*, 446 Mich 587, 597; 521 NW2d 312 (1994). As our Supreme Court explained:

> Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release. These considerations change when a case is tried by a judge sitting without a jury. But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility. [*Vaughn*, 409 Mich at 466 (citation omitted).]

Thus, defendant's argument fails because juries are not held to rules of logic or required to return consistent verdicts.

Defendant also contends that his conviction was against the great weight of the evidence. A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Questions involving credibility should be left to the trier of fact, and "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). This Court must defer to the jury's verdict unless the testimony contradicted indisputable physical facts or the witnesses were so far impeached that their testimony lost all probative value. *Id*. at 645-646. In general, "a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

---

light of all of the evidence, including Rivard's testimony that Jones positively identified defendant as the shooter.

In the instant case, defendant's argument that the verdict was against the great weight of the evidence is coextensive with his argument that there was insufficient evidence. Thus, for the same reasons discussed above, defendant failed to demonstrate that the evidence preponderates so heavily against the verdict that it would be an injustice to allow it to stand. Instead, defendant brought to light questions of witness credibility and inconsistent testimony, which are properly left to the jury to resolve. *Lemmon*, 456 Mich at 647.

## IV. STANDARD 4 BRIEF

Defendant filed a brief *in propria persona* pursuant to Administrative Order 2004-6, Standard 4. Defendant contends that the prosecutor committed misconduct by referencing facts during his opening statements and closing arguments that were never presented in evidence. We review this issue for plain error because defendant failed to preserve it with a timely objection below. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Issues of prosecutorial misconduct are reviewed "on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments*." People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Where there is no allegation that prosecutorial misconduct violated a specific constitutional right, a court must determine whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process of law." *People v Blackmon*, 280 Mich App 253, 262; 761 NW2d 172 (2008).

"A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241. However, prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. at 236. Further, a prosecutor's opening statement is "the appropriate time to state the facts that will be proven at trial." *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010).

Defendant asserts that it was error for the prosecutor to state during opening statements that defendant and Ramsey "agreed and worked together with each other to commit the brutal killing of Mr. Casas[.]" He takes issue with the prosecutor's statement that the evidence presented would show that defendant and Ramsey were in a vehicle and that defendant got out and shot Casas, that Ramsey aided and abetted defendant, and that the men possessed a firearm. Defendant also takes issue with the prosecutor's description of the shooting and statements about the witnesses' anticipated testimony. But these statements reveal that the prosecutor was properly stating the facts that he intended to prove at trial, *Ericksen*, 288 Mich App at 200, or making reasonable inferences from the evidence he intended to introduce as it related to his theory of the case, *Unger*, 278 Mich App at 236. In short, defendant has not pointed to any statement made by the prosecutor that was actually outside the scope of the evidence later presented at trial or that was not a reasonable inference derived from the evidence later presented.

Defendant also contends that the prosecutor violated his Sixth Amendment right to confrontation and cross-examination because the prosecutor effectively became an unsworn

witness by arguing facts not in evidence. This claim lacks merit because the prosecutor did not argue facts not in evidence or in any other way testify against defendant.

Defendant further contends that the prosecutor made statements during closing arguments that were unsupported by facts or evidence. However, defendant abandoned these claims by merely providing citation to multiple pages of the transcript without specifying what statements he takes issue with and without briefing the merits of his claims. See *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014) (holding that failure to properly argue the merits of an issue results in abandonment on appeal). In any event, after reviewing the pages identified by defendant, they merely contain the prosecutor's arguments relating to his theory of the case or his summary of the witnesses' testimony. Nothing stated by the prosecutor was improper because, as we indicated above, prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236.

Finally, defendant argues that the prosecutor improperly bolstered the testimony of Rivard and vouched for his credibility during closing arguments because the prosecution's case hinged on Rivard's testimony that Jones identified defendant. "A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Nevertheless, a prosecutor may argue from the facts that a witness should be believed. *Id*. It is proper for a prosecutor to "comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes."

Defendant takes issue with the following statement made by the prosecutor that referenced Rivard's testimony that Jones identified defendant and Jones's conflicting testimony that he did not:

> Who has more to lose? When you talk about analyzing the testimony of witnesses and when you – and the court will instruct you about motives to say things and whether they're truthful, untruthful, deliberate, un-in-deliberate [sic], that sort of thing, who has more to lose here? A 13-year veteran of the Michigan State Police Department who's conducted a number of investigations, or a 16-year-old kid whose mom recognizes, they shoot witnesses. Who has more to lose?
>
> This kid has to survive in society. He has to function in a day-to-day living in a place where they shoot witnesses.

Defendant argues that this statement constitutes improper vouching for the credibility of Rivard. In context, this line of argument was clearly a response to defense counsel's argument that Jones had no reason to be untruthful. Additionally, the prosecutor was not implying that he had special knowledge of the truthfulness of the police officer. In fact, the prosecutor made no comment about his personal knowledge or belief regarding the truthfulness of Rivard; he merely argued that Jones had a reason to be untruthful while Rivard did not. Thus, defendant failed to

demonstrate that the prosecutor impermissibly bolstered Rivard's testimony or vouched for his credibility.

Finally, defendant argues that his counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct described above. Review of a claim of ineffective assistance of counsel is limited to the existing record where, as here, the defendant fails to move for a new trial or an evidentiary hearing. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). "To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81. "A defendant may meet this burden 'even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.' " *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012), quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052, 2068; 80 L Ed 2d 674 (1984). "The defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

For the reasons discussed above, defendant failed to demonstrate that there were any instances of prosecutorial misconduct. Thus, defendant has not shown that counsel's performance fell below an objective standard of reasonableness by failing to make objections. Indeed, any objection would have been futile, and counsel is not ineffective for failing to raise a futile objection. *Ericksen*, 288 Mich App at 201.

## V. CONCLUSION

We conclude for the reasons stated above that the station-house showup was not unnecessarily suggestive and, accordingly, that the trial court did not clearly err in denying defendant's motion to suppress Jones's identification. Defendant having thus failed to show that the "pretrial identification process was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification[,]" he has failed to sustain his due process challenge. *Kurylczyk*, 443 Mich at 302. We further conclude that Rivard's testimony of Jones's identification of defendant was admissible pursuant to MRE 801(d)(1)(C) as non-hearsay, and reject defendant's contention that the trial court should have excluded the testimony based on the suggestiveness of the showup. Likewise, for the reasons stated above, we conclude that evidence presented at trial was sufficient to sustain defendant's conviction for conspiracy to commit open murder, and that said conviction is not against the great weight of the evidence. Finally, we conclude that defendant has not sustained his claims of prosecutorial misconduct, and has not shown that the conduct of the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process of law." *Blackmon*, 280 Mich App at 262.

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly

-12-